IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

STATE OF WEST VIRGINIA,

    Plaintiff,

vs.                                  Civil Action No. 1:10-1403
                                  Honorable Judge David A. Faber

TRAVIS W. BARKER,

    Defendant.

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO STATE OF WEST VIRGINIA'S MOTION TO REMAND

COMES NOW the Defendant, Travis W. Barker, by and through counsel, John H. Bryan, Martha J. Fleshman, John H. Bryan, Attorneys at Law, and respectfully submits this memorandum of law in opposition to Plaintiff's Motion to Remand.  Pursuant to 28. U.S.C. 1442(a)(1), where a criminal defendant in a state court prosecution is a federal officer who has a colorable federal defense, the prosecution can be removed, pursuant to 28 U.S.C. 1446, to federal court.  The Defendant Travis Barker undisputedly was a federal officer at the time of his arrest.  It further cannot be disputed that Mr. Barker has a colorable federal defense, applicable due to his status as a qualifying federal officer: primarily, LEOSA.  Although the Plaintiff has now agreed to dismiss the concealed weapon charge for which the Defendant has been prosecuted for two and one half years, citing the LEOSA defense, the State's prosecution for "assault on an officer" is ongoing, and the same colorable federal defense applies.

## I. INTRODUCTION

On July 10, 2008, Defendant Travis W. Barker, a federal law enforcement officer, was arrested by West Virginia State Trooper Claude Nathan Workman for carrying a concealed weapon, and for assault on an officer.  It was alleged that Trooper Workman pulled over the Defendant for a routine traffic stop and discovered that he had a concealed handgun, and that during his processing, Mr. Barker allegedly committed a non-physical assault against Trooper Workman.  Attached to the NOTICE OF REMOVAL as Exhibit "A" is the Criminal Complaint against the Defendant, as well as the ensuing Motion to Dismiss, Writ of Prohibition to the Circuit Court of Mercer County, and Order denying the Writ of Prohibition and transferring to Circuit Court.

On July 9, 2010, with the criminal charges still pending, the Defendant filed a civil lawsuit against Trooper Workman, the West Virginia State Police, and the Mercer County Commission in the Circuit Court of Mercer County, West Virginia, alleging that Mr. Barker was wrongfully arrested, and that he was beaten by Trooper Workman during processing, alleging that Trooper Workman wrongfully arrested and beat Mr. Barker because he was having an affair with Workman's wife.  Attached to the NOTICE OF REMOVAL as Exhibit "B" is a copy of the civil Complaint filed against Trooper Workman, the West Virginia State Police, and the Mercer County Commission.

At the time of his arrest, Travis Barker repeatedly advised Trooper Workman that he was a federal law enforcement officer and that he could carry a concealed weapon under the Law Enforcement Officers Safety Act ("LEOSA"), a federal statute enacted in 2004 and signed into law by President George W. Bush.  However, Trooper Workman refused to acknowledge LEOSA.  The Prosecuting Attorney for Mercer County also

refused to acknowledge LEOSA.  Recently the said Prosecuting Attorney for Mercer County resigned.  The new Prosecuting Attorney for Mercer County, Scott Ash, has rightfully moved to dismiss the concealed weapon charge, citing the application of LEOSA.  Now he is seeking that the related charge for "assault on an officer" be remanded to state court.

## II. DISCUSSION

### A.   "REMOVAL IS NOT TIMELY"

Plaintiff argues that removal of Mr. Barker's criminal prosecution to federal court is untimely due to the fact that the initial arrest of Mr. Barker took place on July 11, 2008.  28 U.S.C. 1446(c)(1) provides that "notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

Although, the NOTICE OF REMOVAL was not filed within thirty days of the Defendant's "arraignment", it did take place well in advance of there being a scheduled trial date.  Good cause exists to allow the Defendant to file the NOTICE OF REMOVAL after the thirty day period.  Most importantly, the Defendant had no idea that it was possible to remove his prosecution to federal court.  When almost two years had passed, the Defendant retained the undersigned counsel to file a civil lawsuit as well as to defend the Defendant against the prosecution.  The U.S. Attorney's Office contacted the undersigned counsel and advised the undersigned counsel of the federal officer

removal statute and provided the applicable West Virginia case law, after which the NOTICE OF REMOVAL was filed.

Additionally, one of the primary purposes of the federal officer removal statute is to protect the interests of the federal government and to guard against state or local prejudice.  The 4th Circuit reviewed a similar West Virginia case in <u>Kolibash v. Committee on Legal Ethics of the West Virginia Bar</u>, 872 F.2D 571 (4th Cir. 1989), where William Kolibash then-U.S. Attorney for the Northern District of West Virginia, filed a notice of removal under 1442(a)(1) when the state bar brought disciplinary proceedings against him which arose out of his duty as a federal officer.  Ultimately, the Court ruled that removal under 1442(a)(1) was proper, despite the District Court's refusal to accept jurisdiction.  The Court noted that:

> A federal court's role under Sec. 1442 is similar to that of a federal court sitting in diversity. *See* <u>City of Aurora v. Erwin</u>, 706 F.2d 295, 296-97 (10th Cir. 1983).  The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court "***free from local interests or prejudice***," <u>Arizona v. Manypenny</u>, 451 U.S. 232, 241-42, 101 S.Ct. 1657, 1664-65, 68 L.E.d.2d 58 (1981), and a federal officer is therefore guaranteed a federal forum in which federal rules of procedure will be applied.

<u>Kolibash</u>, 872 F.2D 571 at 576 (emphasis added).  The Court also noted that "[t]his Court has held that the right of removal conferred by Sec. 1442(a)(1) is to be broadly construed. <u>North Carolina v. Carr</u>, 386 F.2d 129 (4th Cir. 1967). *See also* <u>Nationwide Investors v. Miller</u>, 793 F.2d 1044, 1045 (9th Cir. 1986); <u>Overman v. United States</u>, 563 F.2d 1287, 1290-91 (8th Cir. 1977)." <u>Kolibash</u>, 872 F.2D 571 at 576.  Furthermore, "a federal forum should not be frustrated by a 'narrow, grudging interpretation' of the statute. <u>Willingham</u>, 395 U.S. at 407, 89 S.Ct. at 1816." <u>Kolibash</u>, 872 F.2D 571 at 576.

It was well over two years after the date of arrest/arraignment[1] that the Defendant even had the opportunity to understand that there was local prejudice which required removal to federal court.  The criminal prosecution of the Defendant lingered for two years before the undersigned counsel was even retained, which in and of itself should be grounds for dismissal of the misdemeanor prosecutions.[2]  The Defendant's prior counsel filed a motion to dismiss in magistrate court.  There apparently was no order issued, and counsel then filed a Petition for Writ of Prohibition.  The Circuit Court remanded the issue back to magistrate court due to there being no order ever having been issued.  The undersigned counsel filed another motion to dismiss.  By the time it was heard, on August 2, 2010, it became apparent to the Defendant and counsel, that the state courts were ignoring federal law and the rights of the Defendant.  After submitting a lengthy written motion to dismiss, supported by exhibits and authority, and after a lengthy oral argument, the magistrate just said, "as a former police officer, this is one case I want to see go to trial".  The Defendant then filed yet another Petition for Writ of Prohibition.  The Circuit Court judges then all recused themselves, with the exception of the narrow ruling that a circuit judge is not allowed to dismiss a criminal case on the merits without the prosecution having first presented a case-in-chief at trial.  It was

---

[1] Since the criminal charges were misdemeanors, there would have been no arraignment per se, as in a felony indictment, where a defendant is represented by counsel in a formal proceeding before a court. Misdemeanor arraignments generally take place without counsel present either in a magistrate court at the time of arrest, or via video conference from a regional jail.

[2] In State ex rel. Stiltner v. Harshbarger, 170 W. Va. 739, 296 S.E.2d 861 (1982), the West Virginia Supreme Court of Appeals held that the speedy trial guarantees of W. Va. Code § 62-3-1 (the "one term rule") and W. Va. Code § 62-3-21 (the "three term rule") are applicable to magistrate courts.  A defendant charged in magistrate court is entitled to be tried within one hundred twenty (120) days of the service of the criminal warrant.

shortly thereafter that counsel was contacted by the U.S. Attorney's Office regarding the federal officer removal statute.

28 U.S.C. 1446(c)(1) does allow removal of a criminal prosecution at any time prior to trial, as long as (a) there was no arraignment in the case, or (b) the Court finds good cause exists to grant leave for a later filing.  Essentially, Mr. Barker did not have an arraignment as may have been anticipated by the federal legislation.  He was not represented by counsel in a formal arraignment hearing.  The statute should be broadly construed so as to allow filings to take place at any time prior to trial in a West Virginia misdemeanor case.  Secondly, there exists good cause to excuse Mr. Barker's later filing.  LEOSA is a federal statute that is widely ignored by state and local governments and law enforcement agencies.  Especially in West Virginia, the federal government has an interest in protecting federal law and federal interests, such as its employees who are told by the U.S. Department of Justice, that LEOSA protects them.  Without a venue in federal court, there is nothing to stop state courts from ignoring federal law.  The State delayed Mr. Barker's prosecution.  Mr. Barker should be excused for a post-30-day filing.

B. "Lack of Federal Question"

The State of West Virginia claims that (1) LEOSA is not a colorable federal defense because they characterize it is an affirmative defense; and (2) the State is now dismissing the concealed weapon charge, and therefore there no longer is a federal defense to the remaining charges of "assault on an officer", speeding, and having an unsigned registration card.  However, LEOSSA is a colorable federal defense, whether or not the State characterizes it as an "affirmative defense", and it applies both to the

original prosecution for carrying a concealed weapon and to the ensuing "assault on an officer" charge which allegedly occurred while the Defendant was chained to the floor of the Princeton West Virginia State Police detachment.  In reality, it was the Defendant who was assaulted, as evidenced by the blood observed in the photographs of the Defendant taken after he was beaten, as well as the Defendant's medical records following the beating, all of which have been provided to law enforcement and prosecutors.  It was not alleged that the Defendant ever touched Trooper Workman, only that he "assaulted" him, or in other words, gave him the "evil eye", allegedly justifying a use of force which caused the Defendant to bleed.

Admittedly, the State has prosecuted one of its own citizens for two and one half years for a charge for which he was innocent.  Undisputedly, the arresting officer believed the Defendant to be having an affair with his wife.  Undisputedly, the officer's wife warned the Defendant ahead of time, and others, that her husband was going to pull over the Defendant and do something to him.  In spite of this, the State is proceeding to prosecute the Defendant for allegedly assaulting this officer, and for speeding, and for failing to sign his registration card.  In essence, this is a state-sponsored personal vendetta, which can only be protected against by federal law, and federal courts.

The state courts and prosecutors have completely failed to obey federal law.  The undersigned counsel spoke with the U.S. Attorney's Office, attorneys for the U.S. Bureau of Prisons, as well as supervising attorneys at the West Virginia Attorney General's Office, and none of the said entities can understand why the Defendant is being prosecuted, nor why the county prosecutors have ignored LEOSA.

There have been several 4th Circuit decisions dealing with 1442(a)(1).  In State v. Ivory, 906 F.2d 999 (4th Cir. 1990), the Court found that 1442(a)(1) did not apply to a North Carolina state court prosecution of a member of the military for a traffic-based criminal prosecution arising out of a collision while driving in a military convoy.  In that case, the Court held that although the defendant was a federal officer, there was no colorable federal defense, and that therefore, 1442(a)(1) did not apply.  "Many of the facts in dispute here to not speak to the federal character of the incident and are simply matters for the state courts to resolve." Id. at 1002.  "Under *Mesa* [the defendant] must allege facts that would support a colorable immunity defense if those facts were true. Id. Since under the facts of Ivory, federal immunity was not implicated for the traffic offense which occurred in that case, removal was inappropriate under 1442.  However, the Court noted that:

> Section 1442, of course, operates under the Supremacy Clause to displace state interests in the prosecution of traffic offenses, but only to the extent that its constitutionally-derived requirements are met.  In the usual case, where some special exigency exists, the state interest in regulation of its highways must give way under Sec. 1442 to the federal interests implicit in any defense of immunity.  For example, state law will not apply to federal officials "engaged in the performance of a public duty where speed and the right of way are a necessity." Lilly, 29 F.2d at 64.  However, Ivory has alleged nothing which justified his making the left hand turn without yielding the right of way to oncoming vehicles.  The convoy was returning from a routine transport of marines; nothing resembling an emergency existed.  Ivory had no reason to accelerate  through the intersection.  His orders were to maintain a minimum distance of at least one-and-one-half truck lengths between vehicles.  He was under no order prohibiting vehicles in the convoy to separate more than a maximum distance apart.  There may, of course, be circumstances where military drivers may properly invoke the removal provisions of Sec. 1442(a)(1).  We cannot hold, however, that the mere presence of a driver in a military convey automatically gives rise to a colorable claim of immunity from local traffic laws."

Ivory, 906 F.2d 999 at 1002-1003.  The Ivory Court cited Mesa v. California, 489 U.S. 121, 109 S.Ct. 959, 103 L.E.d.2d 99 (1989) as being on point:

> In Mesa, United States Postal Service employees attempted to remove to federal court their state criminal prosecutions for traffic violations which arose in the course of their mail delivery duties.  One employee had been charged with misdemeanor-manslaughter after she struck and killed a bicyclist with her mail truck.  The second individual received a ticket for speeding and failing to yield the right-of-way after his mail truck collided with a police car. See California v. Mesa, 813 F.2d 960, 961 (9th Cir. 1987).  The postal workers argued that they were entitled to remove under the federal officer removal statute, 28 U.S.C. Sec. 1442(a)(1), because "the state charges arose from . . . accident[s] . . . which occurred while defendant[s] [were] on duty and acting in the course and scope of [their] employment with the Postal Service." Mesa, 109 S.Ct. at 962.
> . . .
>
> The  Supreme Court held, however, that a "scope of employment" defense was insufficient by itself to support removal.  It stressed that Sec. 1442(a) is a pure jurisdictional statute which requires averment of a colorable federal defense in order to satisfy the requirement of Article III that a case arise under the Constitution or laws of the United States. Id. at 964, 968.  Since defendants "ha[d] not and could not present an official immunity defense to the state criminal prosecutions brought against them," the Court held that they were not permitted to remove their cases to federal court. Id. at 967.

Ivory, 906 F.2d 999 at 1001.

The 4th Circuit reviewed a similar West Virginia case in Kolibash v. Committee on Legal Ethics of the West Virginia Bar, 872 F.2D 571 (4th Cir. 1989), where William Kolibash then-U.S. Attorney for the Northern District of West Virginia, filed a notice of removal under 1442(a)(1) when the state bar brought disciplinary proceedings against him which arose out of his duty as a federal officer.  Ultimately, the Court ruled that removal under 1442(a)(1) was proper, despite the District Court's refusal to accept jurisdiction.  The Court noted that:

> A federal court's role under Sec. 1442 is similar to that of a federal court sitting in diversity. See City of Aurora v. Erwin, 706 F.2d 295, 296-97 (10th

> Cir. 1983). The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court "*free from local interests or prejudice*," Arizona v. Manypenny, 451 U.S. 232, 241-42, 101 S.Ct. 1657, 1664-65, 68 L.E.d.2d 58 (1981), and a federal officer is therefore guaranteed a federal forum in which federal rules of procedure will be applied.

Kolibash, 872 F.2D 571 at 576 (emphasis added). The Court also noted that "[t]his Court has held that the right of removal conferred by Sec. 1442(a)(1) is to be broadly construed. North Carolina v. Carr, 386 F.2d 129 (4th Cir. 1967). *See also* Nationwide Investors v. Miller, 793 F.2d 1044, 1045 (9th Cir. 1986); Overman v. United States, 563 F.2d 1287, 1290-91 (8th Cir. 1977)." Kolibash, 872 F.2D 571 at 576. Furthermore, "a federal forum should not be frustrated by a 'narrow, grudging interpretation' of the statute. Willingham, 395 U.S. at 407, 89 S.Ct. at 1816." Kolibash, 872 F.2D 571 at 576. In deciding that the proper forum for the state action against Mr. Kolibash was federal court, the Court held that "[t]he removal statute clearly covers all cases where federal officer can raise a colorable defense arising out of their duty to enforce federal law. Kolibash, 872 F.2D 571 at 574 (quoting Willingham v. Morgan, 395 U.S. 402, 406-07, 89 S.Ct. 1813, 1815-16 (1969). In deciding the case, the Kolibash Court held that:

> It is not necessary for us to decide whether immunity attaches to this case and if it does to what degree. At the very least, a colorable claim of immunity exists, the validity of which should be judged by federal standards in a federal district court. *See* Willingham, 395 U.S. at 406-07, 89 S.Ct. at 1815-16.

Kolibash, 872 F.2D 571 at 575. Additionally, the Court noted that the "Theory of Protective Jurisdiction" is relevant to a 1442 analysis:

> Finally, although we do not rely upon the notion of "protective jurisdiction" to sustain removal in this case, we do note that many of the federal interests underlying that theory are particularly relevant to the instant appeal *See* Schumacher v. Beeler, 293 U.S. 367, 374, 55 S.Ct. 230, 233, 79 L.Ed. 433 (1934). *See also* Note, The Theory of Protective Jurisdiction,

> 57 N.Y.U.L.Rev. 933 (1982).  Kolibash's alleged misconduct, for example, arose out of a federal grand jury drug investigation and a subsequent criminal trial in federal district court.  Significant federal interests are therefore involved regardless of whether Kolibash has a federal defense to the state professional disciplinary proceeding. *Compare* Mesa v. California, 489 U.S. 121, 109 S.Ct. 959, 103 L.E.d.2d 99 (1989) (no federal interest in allowing federal postal employees to remove to federal district court state criminal prosecutions brought against them for traffic violations, including misdemeanor-manslaughter, committed while on duty).

Kolibash, 872 F.2D 571 at 576.

In the case *sub judice*, there does exist a colorable federal defense to the state criminal prosecution of Defendant Travis Barker.  There is a federal statute, enacted by Congress and signed by President Bush, which authorized the Defendant, as a federal law enforcement officer, to carry a concealed weapon while off-duty, notwithstanding any state or local law to the contrary.  As a federal law enforcement officer, Mr. Barker has off-duty arrest powers by federal statute.[3]  To allow him the ability to enforce federal law and to protect himself, federal law allows him to have a concealed handgun in furtherance of his federal duty to enforce the law (LEOSA).  In defiance and disregard of this federal law, Mercer County prosecutors have for years prosecuted the Defendant, all-the-while claiming ignorance of LEOSA.  Although they finally have apparently acknowledged the application of LEOSA and agreed to dismiss the concealed weapon charge, they refuse to acknowledge the fact that since the arrest of Mr. Barker was unlawful, the "assault" prosecution must also be dismissed.  If this can happen to Travis Barker, it can happen to other federal employees, not just employees of the U.S. Bureau of Prisons, but other agencies which fall under LEOSA.  To allow states to subject

---

[3] *See* 18 U.S.C. § 3050 (authorizing US BOP employees to make arrests for various infractions of law).

federal employees to arrest at the whim of any state prosecutor or officer, is ludicrous, and a obvious detriment to federal interests.

The argument that LEOSA is merely an affirmative defense and that anyone carrying a weapon under LEOSA can be arrested and tried, is absurd.  Even the state of California has issued a written memorandum from the California Attorney General's office noted that LEOSA overrides any local or agency internal policy regarding off-duty carry by police officers.  Both the leadership of the West Virginia State Police and the West Virginia Attorney General's Office recognizes and respects LEOSA.[4]  According to the West Virginia State Police's website, current or retired law enforcement officers are exempt from having to obtain a concealed weapon permit.  From the West Virginia State Police's "Frequently Asked Questions" page on their website:

> Q. I am a police officer from another state who will be traveling through West Virginia, may I lawfully carry my service weapon?
>
> A. As of July 22, 2004, federal law permits any qualified current or retired law enforcement officer to carry a concealed firearm in any of the 50 states. Officers must carry identification issued from the agency from which they are employed or retired while possessing the firearm. Retired members from states other than West Virginia must carry proof that they have met their respective state's standards for training and qualification on the firearm which they carry within one year of the date that they are carrying the firearm. Certain other restrictions apply. Please click here to view the complete text of the new law.

See West Virginia State Police <u>Frequently Asked Questions</u>, attached to the NOTICE OF REMOVAL as Exhibit "D".[5]  Additionally, the West Virginia Attorney General's Office, in their publication, "*On the Mark: A Guide to Concealed Weapons Laws of West Virginia*," devoted 4 out of its 12 pages to LEOSA.  A copy of said publication is attached

---

[4] *See* http://ag.ca.gov/firearms/forms/pdf/leosiss.pdf

[5] *See* http://www.wvstatepolice.com/legal/faq's.html

to the NOTICE OF REMOVAL as Exhibit "E". The state police's frequently asked questions does not advise other officers that they may be arrested, but can raise an affirmative defense at trial. It does not advise officers that they are required to carry their training and disciplinary records with them to carry a firearm concealed in West Virginia.

The reality is, that prosecutors and law enforcement made a mistake in arresting and prosecuting Travis Barker. But for whatever reason, they have refused to admit it, and are now intent on getting the assault conviction against Mr. Barker - in complete disregard for the foul smelling character of the only evidence against him: the testimony of an officer with a proven personal vendetta against the Defendant. This is evidence, and an arrest, which is, or should be, in violation of any police procedures manual in existence.

The State of West Virginia is acknowledging the application of LEOSA to its own employees, such as state troopers. However, it is denying the same application to federal employees. There are significant federal interests at issue in Mr. Barker's case, namely, whether the State can arrest federal employees for merely following federal law. Without a federal court ruling regarding the application of LEOSA, similar abuse of federal interests and employees will continue.

Additionally, Travis Barker has another colorable federal defense to prosecution, 18 U.S.C. 926A, which is also detailed in the West Virginia Attorney General's Guide to the Concealed Weapons Laws of West Virginia, in *On the Mark*, provides that:

> **18 U.S.C. § 926A. Interstate transportation of firearms**
>
> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise

> prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a fi rearm for any lawful purpose from any place where he may lawfully possess and carry such fi rearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

Thus, pursuant to federal law, and pursuant to West Virginia's only official guide to its concealed weapons laws, an unloaded handgun without readily accessible ammunition can be transported in a vehicle and no crime is committed.  No ammunition was found or seized with Mr. Barker's unloaded handgun.  Therefore, even if Mr. Barker did not qualify under LEOSA, no crime would have been committed.  Unfortunately for Mr. Barker, the county prosecutors have completely ignored federal law.

Mr. Barker is not getting a fair opportunity at presenting federal defenses in state court, where ***prejudice and local interests*** have been at play.  After moving to dismiss the charges based on LEOSA (a copy of the Motion to Dismiss is attached to the NOTICE OF REMOVAL as a part of Exhibit "A"), one magistrate judge replied that, "I was a former police officer and I want to see this case go to trial," refusing to even address legal arguments, or even to issue an order in writing.  The local circuit court judges have refused to reign in the prosecutor, and have now recused themselves, transferring the case to a circuit judge in a neighboring county.  Upon information and belief, the local detachment of the state police and the county prosecutors have developed a personal animosity against Mr. Barker due to his civil lawsuit pending against them, and due to the fact that he allegedly had an affair with Trooper Workman's wife.  The West Virginia State Police sent an investigator to obtain Mr. Barker's

employment files with the U.S. Department of Justice - not during the criminal investigation, but rather after Mr. Barker filed a civil lawsuit almost two years after Mr. Barker's arrest. Mr. Barker voluntarily authorized the DOJ to release his employment files to the investigator, all of which proved the applicability of LEOSA. A copy of the records is attached to the RESPONSE TO MOTION TO REMAND as Exhibit "A". In contrast, there has been no disciplinary action taken against Trooper Claude Nathan Workman for pulling over and arresting, under color of law, the man whom he accuses of having an affair with his wife, therein abusing his public position to achieve personal revenge. Unbelievably, he was supported in this endeavor, and continues to have support from state and local authorities. There was however, an FBI investigation opened against Trooper Workman, the details of which have not been released. See <u>FBI investigating state trooper accused in beating</u>, Charleston Gazette, July 24, 2010.[6]

      The "Theory of Protective Jurisdiction" is also relevant to Mr. Barker's case. The federal government has an interest in retaining protective jurisdiction over LEOSA's application to federal law enforcement officers. There is nothing to stop a state court from refusing to acknowledge LEOSA. If this happens, Mr. Barker, or any other federal law enforcement officer, will have no avenue for relief but to appeal to the West Virginia Supreme Court of Appeals. Only the U.S. Supreme Court could protect federal interests in such a scenario. Proper jurisdiction should lie in the U.S. District Court where the 4th Circuit could address any appeals from the District Court's decision.

      Travis Barker's case is not a situation where a federal employee is seeking federal immunity for traffic offenses committed while on duty. Rather, it is similar to U.S.

---

[6]*See* http://wvgazette.com/News/201007240242

Attorney Kolibash being made a defendant in state court for undertaking actions authorized by federal law.  In both the case sub judice and the Kolibash case, the defenses proffered to activate removal under 1442 both directly affect federal interests.  Travis Barker, similar to Mr. Kolibash, is a federal officer, authorized and obligated by federal law to enforce federal law.  In both instances, there was a state actor who claimed that, in carrying out actions authorized to federal officers by federal law, state crimes or administrative offenses were committed and were subject to process in West Virginia state courts.  In both cases, there existed and were asserted colorable federal defenses.  In Kolibash, the federal defense was federal prosecutorial immunity.  In the case sub judice, the federal defense is LEOSA.  Whether or not the defenses will ultimately prevail on the merits is not at issue under 1442 and 1446.  It only matters that there exist a colorable claim to a federal defense. See Kolibash, 872 F.2D 571 at 575 ("It is not necessary for us to decide whether immunity attaches to this case and if it does to what degree.  At the very least, a colorable claim of immunity exists, the validity of which should be judged by federal standards in a federal district court.").  Travis Barker clearly has a colorable claim to a federal defense, which should be judged within the federal courts, and not in state courts which may be subject to local interests or prejudice (e.g., civil lawsuit between the Defendant and the State and County), which in this case have already been displayed with the utter disregard for federal law and interests.

      Lastly, consolidated with the concealed weapon prosecution, are counts for assault on an officer, speeding and having an unsigned registration card.  The assault on an officer charge allegedly occurred while the Defendant was chained to the floor of

the Princeton state police detachment while under arrest for the concealed weapons charge.  Therefore, LEOSA is a complete and valid defense to the assault charge.  The federal defenses of LEOSA and 18 U.S.C. 926A also preclude prosecution for assault on an officer, and at the very least would require suppression of any testimony by Trooper Workman that there was an alleged "assault".  Since the arrest was in violation of federal law, it was an illegal arrest.  As such, Mr. Barker could have forcibly resisted his detainment if he had chosen to do so and was certainly entitled to give Trooper Workman a "threatening" look.  It was only alleged that he "assaulted" Trooper Workman without any physical contact.  In other words, he gave Trooper Workman "the evil eye".  The two counts were charged as a consolidated prosecution and have been prosecuted in a consolidated manner for over two years now, and were transferred together to Circuit Court.  Thus, this Court should jurisdiction over the consolidated prosecution rather than just the concealed weapon charge, which is still pending.  Even without the concealed weapon charge, the assault charge itself continues to hinge on colorable federal defenses.  The Defendant is unconcerned about the disposition of the speeding charge and the unsigned registration charge, since they are minor traffic offenses.  In the event this Court chooses not to keep them consolidated with the other charges within the jurisdiction of this Court, the Defendant will voluntarily pay the fines.

### III.  CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court deny the Plaintiff's Motion to Remand.

TRAVIS BARKER<br>
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
Martha J. Fleshman (WV Bar No. 8542)
JOHN H. BRYAN, ATTORNEYS AT LAW
611 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Defendant

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 3, 2011, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO STATE OF WEST VIRGINIA'S MOTION TO REMAND with the Clerk of the Court using the CM/ECF system and served the same on plaintiff by U.S. Mail delivery addressed as follows:

Scott Ash, Esq.
Prosecuting Attorney of Mercer County
Mercer County Courthouse
1501 West Main Street
Princeton WV 24740


                /s John H. Bryan